Ronald R. SMITH, Plaintiff-Appellee,

v.

William R. "Bill" PAULK, Commissioner, State Department of Labor, State of Oklahoma, Defendant-Appellant.

No. 80–1624.

United States Court of Appeals, Tenth Circuit.

April 22, 1983.

Michael L. Bardrick, Asst. Atty. Gen., Oklahoma City, Okl. (Jan Eric Cartwright, Atty. Gen. and Stephen F. Shanbour, Asst. Atty. Gen., of Okl., Oklahoma City, Okl., on the brief), for defendant-appellant.

William D. Watts of Andrews, Davis, Legg, Bixler, Milsten & Murrah, Oklahoma City, Okl. (A. Bernard Frechtman of Frechtman & Klarreich, P.C., New York City, was also on the brief), for plaintiff-appellee.

Before HOLLOWAY, DOYLE and LOGAN, Circuit Judges.

HOLLOWAY, Circuit Judge.

The question presented by this appeal is whether 40 O.S.Supp.1974 § 53(b) is constitutional in that it requires private employment agency license applicants to be residents of Oklahoma for one year preceding such application.

1. In 40 O.S.Supp.1974 § 53(b), the Oklahoma legislature declared:

> Every applicant for a license [to open, operate or maintain an employment agency] shall have been a resident of the State of Oklahoma for at least one (1) year immediately preceding the filing of such application, and shall have had at least one (1) year of experience as a placement counsellor in a

I

A.

The facts are brief and undisputed. Plaintiff Ronald Smith, an Iowa resident, has operated licensed employment agencies in Iowa since 1976. His Iowa agencies are franchisees of Robert Half International, a large international financial and data processing employment agency. Plaintiff is compensated by the employers with whom he places his clients, and he is not compensated in any way by the clients themselves.

In December 1979 plaintiff applied with the Oklahoma State Department of Labor for a license to operate an employment agency in Oklahoma. The application was on behalf of Robert Half of Oklahoma, Inc., a corporation to be formed. Plaintiff submitted the application on a form provided by the Department of Labor. The form is entitled "Corporate Application for a Private Employment Agency License." Plaintiff would be the sole shareholder, the president, general manager, at the outset, and an incorporator. After reviewing the application, defendant Commissioner of Labor William Paulk wrote plaintiff, stating that the Commissioner was inclined to deny the application because plaintiff did not satisfy the one year residency requirement of 40 O.S.Supp.1974 § 53(b).[1]

In January 1980 the Commissioner held a hearing to allow plaintiff to submit evidence of his qualifications for a license. Rex Hall, Legal Administrative Assistant for the Department of Labor, stated at the hearing that the plaintiff appeared qualified for a license in all regards except the one year residency requirement. Plaintiff described the operation of his Iowa agencies, testifying, *inter alia,* that he was president and sole shareholder of the corporation

> licensed employment agency either within or without the state. In the case of corporation applicants, at least one of the incorporators and one of the principal officers thereof, together with the person who is to be responsible for the general management of the office shall meet the above requirements as to Oklahoma residence and experience.

owning the Iowa agencies. Plaintiff further stated that he had never been convicted of a felony, had never been cited for cause in connection with the operation of his agencies, and had at least one year's experience as a placement counselor.

Plaintiff revealed that he was seeking to establish a franchised employment agency in Tulsa, Oklahoma; once that agency was "off the ground and ... staffed" plaintiff intended to start another agency in Oklahoma City. (I R. 33–34). Plaintiff acknowledged that he intended to operate as a corporation of which, as noted, he would be sole shareholder, president, general manager and incorporator. Plaintiff stated that after "at least a period of six months" he would relinquish the general manager's position to one of his employees. (*Id.*). An attorney for the United States Association of Private Employment Agencies testified as to plaintiff's good character. (I R. 35–36). Thus, at the hearing it was established that plaintiff was qualified for a license but for the residency requirement.[2] His license application was denied.

### B.

Plaintiff then filed this action seeking declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202 and 42 U.S.C. § 1983, alleging that 40 O.S.Supp.1974 § 53(b) violated his rights under the Privileges and Immunities, Equal Protection and Due Process Clauses of the United States Constitution.

The district court granted summary judgment for plaintiff. In so doing, the court declined to abstain in favor of a state court interpretation of the statute, as urged by defendant. The court also ruled that the Anti-Injunction Act, 28 U.S.C. § 2283, the Eleventh Amendment and *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669, delimiting the bounds of federal interfer-

ence with certain state court proceedings, posed no bar to the injunctive relief sought by plaintiff.

The court noted that plaintiff was qualified to receive a license aside from his lack of residency in Oklahoma for one year preceding the application. The court also acknowledged the asserted state interest behind the residency requirement—providing adequate time to investigate applicants. The court stated that both Privileges and Immunities Clauses of the United States Constitution "protect against state discrimination [toward] non-residents where there is no substantial reason for the discrimination other than citizenship." Further, the court reasoned that less onerous alternatives were available to accomplish the asserted state interest, and that those alternatives must be pursued before restricting non-residents' constitutional rights. It is clear from the district court's citations that the constitutional right of non-residents burdened by the statute involved the right to travel. *E.g., Keenan v. Board of Law Examiners,* 317 F.Supp. 1350 (E.D.N.C.). Accordingly, the district court held 40 O.S. Supp.1974 § 53(b) unconstitutional

> as violative of the privileges and immunities clause of Article IV, Section 2, Clause 1, of the United States Constitution, and also violative of the privileges and immunities clause and equal protection clause of the Fourteenth Amendment to the United States Constitution insofar as it contains a one year residency requirement as a prerequisite to the granting of a license for the operation of a private employment agency.

I R. 143. Defendant was accordingly enjoined from enforcement of the one year durational residency provision of § 53(b).

### II

To begin, we address defendant's renewed contention that the district court

---

**2.** In his Conclusions of Law, the Commissioner held:

  1. The Commissioner of Labor is charged with the issuance of employment agency licenses.
  2. Each applicant for a license is required to be a resident at least one (1) year immediate-

ly preceding the filing of application for a license.
  3. The applicant does not meet the one (1) year residency requirement for a license in that applicant is not now nor has ever been a resident of the state of Oklahoma.
(I R. 77).

should have abstained from reaching the merits of this action "pending the resolution of potentially controlling unsettled questions of state law by the State of Oklahoma." Citing *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971, defendant contends that the federal constitutional issue raised by the durational residency requirement is premised on underlying state law questions whose resolution in state court may make a decision on the constitutional question unnecessary. Defendant describes the avenues of state appellate review available to rejected license applicants and argues that federalism and comity are best served by abstention. Alternatively, defendant asks this court to certify the questions of law raised herein to the Supreme Court of the State of Oklahoma, pursuant to 20 O.S.1981 §§ 1601–1612.

We cannot agree that the district court should have abstained or that this matter is one calling for certification to the Oklahoma Supreme Court. The doctrine of abstention represents "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colorado River Water Conservancy District v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483. Further, "[t]he decision to abstain is largely committed to the discretion of the district court." *Ramos v. Lamm,* 639 F.2d 559, 564 n. 4 (10th Cir.), *cert. denied,* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239.

We have reviewed the "three general categories" of cases justifying abstention as outlined in the *Colorado River* decision,[3] and, when applied to the facts before us, we cannot agree that the district court abused its discretion by declining to abstain. As noted in the district court's order, 40 O.S.

Supp.1974 § 53(b) is not ambiguous or uncertain as to its meaning. No construction or interpretation of the statute, short of invalidation, will alter its one year residency requirement. *See McRedmond v. Wilson,* 533 F.2d 757, 761–62 (2d Cir.). "Application of the key statutory clause does not require intricate or penetrating statutory interpretation best left to the state." *Id.* at 762. The plaintiff's rights at issue here are entirely federal in nature and the fact that they could have been asserted in state court, instead of federal court, does not alone justify abstention. *Ramos v. Lamm,* 639 F.2d at 564. Finally, while it may be true, as defendant asserts, that § 53(b) might be declared unconstitutional under various provisions of the Constitution of Oklahoma, thereby avoiding a federal constitutional holding, such a hypothetical proposition does not require abstention; abstention would, under defendant's hypothesis, be converted from a narrow doctrinal exception into the general rule. *See Examining Board of Engineers, Architects and Surveyors v. Flores de Otero,* 426 U.S. 572, 598, 96 S.Ct. 2264, 2279, 49 L.Ed.2d 65. We agree with the district court that abstention in these circumstances would have been inappropriate. *City of Moore, Oklahoma v. Atchison, Topeka & Santa Fe Ry.,* 699 F.2d 507, 511 (10th Cir.1983).

Defendant also renews his contention that the injunctive relief ordered by the district court is barred by the theory of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669, which holds that federal courts, absent unusual circumstances, may not enjoin pending state criminal prosecutions or quasi-criminal civil proceedings. Moreover, defendant argues that plaintiff did not allege the requisite "unusual circumstances" to bypass the bar of *Younger.* We disagree.

---

**3.** In *Colorado River,* the Supreme Court sketched three scenarios making abstention proper. Abstention is indicated in: (1) cases " 'presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law' "; (2) cases presenting "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar," and; (3) cases "where, absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings." *Colorado River,* 424 U.S. at 814–16, 96 S.Ct. at 1244; *see Ramos v. Lamm,* 639 F.2d at 563–65, and cases cited there.

First, as the district court noted, it was "not called upon to give relief that may relate in any way to a pending state criminal prosecution or related civil proceeding" and thus *Younger* is inapposite. (I R. 138–39). No party has indicated that there is a pending state proceeding here. Second, the complaint does allege arbitrary conduct by defendant and irreparable injury to plaintiff. (I R. 4, ¶ 14, ¶ 15). Injunctive relief is, of course, available in suits under 42 U.S.C. § 1983, *Dailey v. City of Lawton,* 425 F.2d 1037 (10th Cir.), given the appropriate circumstances. Thus the injunctive relief ordered is not barred, provided the district court's determinations on the merits of this action were correct. We now turn to an examination of the merits.

### III

The ruling of the defendant Commissioner Paulk, which is challenged here, denied the application for a private employment agency license on the basis of 40 O.S.Supp. 1974 § 53(b), which the Commissioner cited and quoted. The portion quoted was that

Every applicant for a license shall have been a resident of the State of Oklahoma for at least one (1) year immediately preceding the filing of such application.

This portion of the statutory requirements for individual applicants is repeated in the second sentence of § 53(b) for corporate applicants. *See* note 1, *supra.* We must assume that it was for failure to comply with the latter *corporate* application requirements that the Commissioner denied the instant application. We say this because it was clearly a corporate application on which the Commissioner ruled. His decision was captioned "Robert R. Smith (Applicant to dba Robert Half of Oklahoma, Inc.)." I R. 76. The application was made on the form for a "Corporate Application for a Private Employment Agency License," stating that the name of the agency was "Robert Half of Oklahoma, Inc." (To be Organized)." I R. 24. And such intention was clearly developed in the administrative hearing record where Smith affirmed that he intended to "operate as a corporation in the name of Robert Half of Oklahoma, Inc." and would own 100% of the stock and hold the franchise. I R. 34. Hence, when the Commissioner denied the application he was ruling on a corporate application.

This is of significant import in the case, although the parties have not developed the corporate issue on appeal. The Commissioner, did however, raise the point in his response to plaintiff's motions for summary judgment in the district court by arguing that corporations are not citizens for purposes of the Privileges and Immunities Clauses. I R. 106–09; *see also* I R. 83–86. We feel we must at the outset of this discussion of the merits of the constitutional issues face the question whether the right to travel theory, which is closely related to the Privilege and Immunities Clauses of Article IV, Section 2, Clause 1, and the Fourteenth Amendment,[4] may be invoked here since only a corporate application was involved in the administrative proceedings.

■ It is clear that a corporation does not have the benefit of the Privileges and Immunities Clauses of Article IV, *see Western & Southern Life Ins. Co. v. Board of Equalization of California,* 451 U.S. 648, 656, 101 S.Ct. 2070, 2076, 68 L. Ed.2d 514; *Hemphill v. Orloff,* 277 U.S. 537, 548–550, 48 S.Ct. 577, 579, 72 L.Ed. 978, or of the Fourteenth Amendment. *See Asbury Hospital v. Cass County,* 326 U.S. 207,

4. In *Shapiro v. Thompson,* 394 U.S. 618, 630, 89 S.Ct. 1322, 1329, 22 L.Ed.2d 600, the Supreme Court stated that it had "no occasion to ascribe the source of this right to travel interstate to a particular constitutional provision." A footnote to the foregoing passage indicates that this right is closely related to the Privileges and Immunities Clauses, although some cases have employed a Commerce Clause or Due Process Clause approach. *Id.* at n. 8. Perhaps, the Supreme Court noted, the reason a textual source is not forthcoming, "is that a right so elementary was conceived from the beginning to be a necessary concomitant of the stronger Union the Constitution created. In any event, freedom to travel throughout the United States has long been recognized as a basic right under the Constitution." *Id.* at 630–31, 89 S.Ct. at 1329, *quoting, United States v. Guest,* 383 U.S. 745, 86 S.Ct. 1170, 16 L.Ed.2d 239.

210–11, 66 S.Ct. 61, 63, 90 L.Ed. 6. The district court's opinion, however, rests upon the Privileges and Immunities Clauses in large part and upon cases applying those clauses. We feel we must recognize this complication arising from the fact that an underlying corporate application is involved here.

Nevertheless, we are persuaded that the district court's ruling was correct. While a corporate application was rejected, the action clearly impacted plaintiff Smith as an individual. The result was that Smith could not serve as the general manager, incorporator or principal officer for the corporation to be organized to satisfy the requirements of § 53(b). This impinged on Smith's rights directly because he clearly testified at the administrative hearing, and the application stated, that he would be coming to open an office in Tulsa, although another manager would come in and, after six months, or after the Oklahoma City office was established, Smith would return to Des Moines. I R. 34. Thus Smith's own personal movements, which were plainly intended, were affected by the application of the statute. And most importantly, Smith individually is the sole plaintiff in this action, asserting the deprivation of his constitutional rights. His claim, as stated by the district court's opinion, was that § 53(b) "is unconstitutional and deprives plaintiff of his privileges and immunities and represents an arbitrary violation of his rights under the equal protection and due process clauses of the Fourteenth Amendment." I R. 139.

■ We are persuaded that plaintiff Smith's own rights under the Privileges and Immunities Clauses and other constitutional guarantees are directly involved and that the district court correctly held that his constitutional rights were violated. The Commissioner argues that licensing of employment agencies is proper for protection of persons peculiarly situated and needing the state's protecting arm, citing *McBride v. Clark,* 101 N.J.L. 213, 127 A. 550 (1925). However, where a classification operates to penalize the exercise of the constitutional

right of interstate migration, the legislative classification must be justified by a compelling state interest. *Memorial Hospital v. Maricopa County,* 415 U.S. 250, 258, 94 S.Ct. 1076, 1082, 39 L.Ed.2d 306; *Dunn v. Blumstein,* 405 U.S. 330, 339–40, 92 S.Ct. 995, 1001, 31 L.Ed.2d 274; *Shapiro v. Thompson,* 394 U.S. 618, 634, 89 S.Ct. 1322, 1331, 22 L.Ed.2d 600.

■ We must consider whether the State has shown that its durational residency requirement is " 'legitimately defensible' in that it furthers a compelling state interest." *Memorial Hospital,* 415 U.S. at 262, 94 S.Ct. at 1084. Even though the activities of employment agencies are properly subject to police power regulation in the public interest, the legislative classification must be shown to be necessary and tailored narrowly to serve legitimate objectives. *See San Antonio School District v. Rodriguez,* 411 U.S. 1, 16–17, 93 S.Ct. 1278, 1287, 36 L.Ed.2d 16; *Dunn v. Blumstein,* 405 U.S. at 343, 92 S.Ct. at 1003. If there are other reasonable ways to achieve the legislative goal with a lesser burden on constitutionally protected activity, "a State may not choose the way of greater interference." *Id.*

The Commissioner argues that while the one year durational residency requirement may very well be a "rough accomodation," it serves as a practical solution in that such a period gives the State adequate time to investigate the applicant. Appellant's Brief at 12–13. The suggestion of this need is not persuasive. There is no convincing response to the natural question why one like Smith, who has engaged in such business in Iowa and Tennessee, could not be investigated by contact with the earlier States of residence. Further, the investigation of the qualifications mentioned—the quality and expertise of employment agency applicants, *see* Appellant's Brief at 13—is not convincing support for a demand of a durational residency requirement of a year. *Cf. Dunn v. Blumstein,* 405 U.S. at 346–47, 92 S.Ct. at 1005. As explained below, we perceive no infirmity in a residency requirement itself. If one is thus a resident, we are not con-

vinced that the lengthy durational residency requirement is justified. The State could where necessary simply take a reasonable time, after a resident applies for a license, to investigate the resident applicant by personal interviews required of him by the agency and by thorough investigation through contacts with other states. *Id.* at 347–48. Accordingly we hold that the one year durational residency requirement of § 53(b) has not been justified and must be declared invalid.

The Commissioner argues that if we conclude we must hold the durational residency requirement invalid, the requirement of residency before issuance of a license is nonetheless valid. Appellant's Brief at 14. The plaintiff does not question the validity of a residency requirement itself. As in *Shapiro,* 394 U.S. at 636, 89 S.Ct. at 1332, the "residence requirement and the one-year waiting-period are distinct and independent prerequisites . . . ." We are persuaded that a residency requirement, without the onerous one year durational feature, is a proper requirement. *Cf. McCarthy v. Philadelphia Civil Service Commission,* 424 U.S. 645, 96 S.Ct. 1154, 47 L.Ed.2d 366. Upholding the residency requirement itself is preferable to the disruption which the invalidation of all the residency provisions in the statute would bring. *Moritz v. C.I.R.,* 469 F.2d 466, 470 n. 5 (10th Cir.), *cert. denied,* 412 U.S. 906, 93 S.Ct. 2291, 36 L.Ed.2d 971. And since we are convinced

that under Oklahoma precedents and guidance from the Supreme Court, the necessary statutory repair can be made to save the residency requirement itself in § 53(b),[5] we hold that with the one year durational feature treated as excised, § 53(b) is valid.

With this modification made concerning the ruling, the judgment of the district court is

AFFIRMED.

---

5. As observed in *Champlin Rfg. Co. v. Commission,* 286 U.S. 210, 234, 52 S.Ct. 559, 564, 76 L.Ed. 1062:

> The unconstitutionality of a part of an Act does not necessarily defeat . . . the validity of its remaining provisions. Unless it is evident that the legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law.

*See also, Scheinberg v. Smith,* 659 F.2d 476, 481 (5th Cir.), *quoting, Jones v. Smith,* 474 F.Supp. 1160, 1169 (S.D.Fla.) (courts are under a "judicial obligation to sustain the constitutionality of an act whenever possible by severing invalid clauses and permitting the remainder of the act to stand"); *Application of State Building Bonds Commission,* 431 P.2d 344, 348 (Okl.). While the act containing § 53(b) has no

severability clause, "the ultimate determination of severability will rarely turn on the presence or absence of such a clause." *United States v. Jackson,* 390 U.S. 570, 585 n. 27, 88 S.Ct. 1209, 1218 n. 27, 20 L.Ed.2d 138.

The fact that the invalid portion of § 53(b)— the one year durational feature—is not a discrete statutory compartment does not affect its severability, *see State Building Bonds Commission, supra,* 431 P.2d at 348, provided that the remaining provisions by themselves do not defeat the legislature's intent. *Tulsa Exposition & Fair Corp. v. Board of Co. Comm'rs,* 468 P.2d 501, 507 (Okl.). We think it apparent that the excision of the durational feature does not do an injustice to the goals the Oklahoma legislature sought. The residency requirement itself remains viable as to both personal and corporate applicants.