

# The Attorney General of Texas

March 19, 1985

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1001 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Wilhelmina Delco
Chairman
Higher Education Committee
Texas House of Representatives
P. O. Box 2910
Austin, Texas    78769

Opinion No. JM-302

Re:    Whether the legislature may impose a longer residency requirement on out-of-state residents who wish to qualify for resident tuition at a state university

Dear Representative Delco:

In all 50 states, a distinction is made between residents and nonresidents of the state regarding the tuition payable by students at state-supported colleges and universities.  The constitutionality of that distinction is not questioned.  See Note, The Constitutionality of Nonresident Tuition, 55 Minn. L. Rev. 1139 (1971).  You have requested our opinion regarding the constitutionality of durational residence requirements applicable to a student's eligibility for the tuition paid by resident students.

Section 54.052 of the Texas Education Code provides that an individual who comes from outside Texas can be classified a resident student only if he resides in Texas for a 12-month period preceding enrollment in an educational institution.  Article 54.054 of the Education Code provides that, after residing in Texas for at least 12 months, a nonresident student may be reclassified as a resident student as provided in the rules and regulations of the Coordinating Board, Texas College and University System, and thereby qualify to pay resident tuition and fees.  You ask whether the state constitutionally can adopt a residency requirement that is longer than 12 months for non-Texas residents to qualify for resident tuition or that requires students who come from out of state to pay nonresident tuition throughout their college careers.  Since you do not submit a special proposal or a definite period of time, we will discuss the question in the abstract.

The Fourteenth Amendment of the United States Constitution provides that no state may deny to any person within its jurisdiction the equal protection of the laws.  The equal protection clause does not prohibit all legislative classifications.  In reviewing legislation under the equal protection clause, the Court adheres to a three-tiered test.  If a statute infringes on a fundamental right or creates an inherently suspect classification, the statute is subject to strict judicial scrutiny which requires the state to establish a

compelling interest in its enactment. To do so, the state must demonstrate that its purpose or interest is both constitutionally permissible and substantial and that its use of the classification is necessary to accomplish its purpose. See In re Griffiths, 413 U.S. 717 (1973). If a statute does not affect a fundamental right or create a suspect classification, the statute is accorded a presumption of constitutionality that is not disturbed unless the enactment rests on grounds wholly irrelevant to the achievement of a legitimate state objective. The latter standard frequently is referred to as the rational basis test. See McGowan v. Maryland, 366 U.S. 420 (1961). A person challenging a classification judged by the rational basis test must establish that the classification does not bear a fair relationship to a legitimate public purpose, whereas a state must justify a suspect classification by showing a compelling state interest. Finally, in certain instances, the Court has inquired whether legislation furthers the "substantial interest" of the state. See Plyler v. Doe, 457 U.S. 202 (1982); reh'g denied, 458 U.S. 1131 (1982).

Statutes requiring one-year residency as a condition of welfare and voter eligibility have come under attack as violations of the equal protection clause in cases in which the United States Supreme Court applied strict judicial scrutiny because the statutes had the effect of penalizing persons who exercised the fundamental and constitutionally protected right to travel from state to state. Shapiro v. Thompson, 394 U.S. 618 (1969), is a landmark case in which the United States Supreme Court nullified statutory provisions which conditioned eligibility for welfare benefits on a one-year residency requirement which had a chilling effect on interstate travel. In Dunn v. Blumstein, 405 U.S. 330 (1972), the Supreme Court struck down a one-year durational residency requirement for voting in elections because the state was penalizing persons who had exercised their constitutionally protected right to interstate travel. See also Memorial Hospital v. Maricopa County, 415 U.S. 250 (1974) (one-year residency requirement for medical care to indigents impinges on right to travel and not justified by compelling state interest); Attorney General Opinions MW-538 (1982); H-1208 (1978).

On the other hand, when confronted with one-year residency requirements for purposes of tuition costs at public colleges, state and federal courts have determined that such residency requirements have no real effect on the fundamental right of interstate travel and have upheld one-year requirements by applying the rational basis standard instead of the "compelling state interest test." In such cases, proof of the student's intent to be domiciled in the state probably is a more justifiable purpose than equalization of costs, but both purposes have been recognized by the courts. Such cases allowed the states to require a student to reside in the state for one year as evidence of his bona fide intent to be permanently domiciled there. See Weaver v. Kelton, 357 F. Supp. 1106 (E.D. Tex. 1973) (upholding section 54.052(e) of the Texas Education Code as rationally related to legitimate state interest); Starns v. Malkerson, 326 F. Supp. 234

(D.C. Minn. 1970), aff'd, 401 U.S. 985 (1971) (regulation imposing one-year waiting period for resident status for tuition purposes upheld because right of interstate travel not infringed and regulation satisfied rational basis test); Sturgis v. State of Washington, 368 F. Supp. 38 (W.D. Wash. 1973), aff'd, 414 U.S. 1057 (1973) (one-year residency requirement for tuition purposes, scrutinized under rational basis test, bore reasonable relationship to legitimate state purpose); Thompson v. Board of Regents of University of Nebraska, 188 N.W.2d 840 (Neb. 1971) (holding durational residency requirement for tuition purposes not penalty on exercise of right of interstate travel and reasonable under rational basis test); Kirk v. Board of Regents of University of California, 78 Cal. Rptr. 260 (Cal. App. 1969), appeal dismissed, 396 U.S. 554 (1969) (applying rational basis test because cost of tuition did not infringe on right to travel).

The courts consistently have distinguished tuition waiting periods from welfare waiting periods and have determined that a one-year tuition waiting period is less likely than a one-year welfare waiting period to deter a person from exercising his right to change residences.

We are not aware of any case in which a court was confronted with the constitutionality of a durational residency requirement for tuition purposes in excess of one year. A one-year period of residency is the usual requirement employed by virtually all state universities. See Note, The Constitutionality of Nonresident Tuition, 55 Minn. L. Rev. 1139, 1140 (1971). We cannot predict whether the courts would uphold a period longer than one year and if so where the courts would draw the line. We do not know at what point a court may determine that a longer residency requirement penalizes or has a chilling effect on the fundamental constitutional right of interstate travel, which in turn would subject the requirement to strict scrutiny and a compelling interest test instead of the test where the requirement only needs to be reasonably and rationally related to a legitimate state purpose. The cases upholding one-year residency requirements clearly indicate that the requirement must be reasonable but have determined that the one-year period is reasonable. In addition, we cannot rule out the possibility that a court would adopt a "substantial interest" test. See Plyler v. Doe, supra.

In Kelm v. Carlson, 473 F.2d 1267 (6th Cir. 1973), the court upheld a one-year residency requirement for reclassification as a resident student but invalidated as unreasonable a provision requiring the student to submit proof that he had secured employment in the state following graduation. In Smith v. Paulk, 705 F.2d 1279 (10th Cir. 1983), the court held unconstitutional a requirement that private employment agency license applicants be residents of the state for one year preceding such application because it penalized the exercise of the constitutional right of interstate migration and was not justified by compelling state interest. The Tenth Circuit Court reiterated the language in Dunn v. Blumstein, 405 U.S. at 343, that

> if there are other reasonable ways to achieve the
> legislative goal with a lesser burden on constitu-
> tionally protected activity, 'a State may not
> choose the way of greater interference.'

705 F.2d at 1284.  Several federal courts and this office have
determined that five-year residency requirements for veterans'
preferences and benefits constitute a denial of equal protection by
discriminating against persons exercising the fundamental right of
interstate travel.  See Barnes v. Board of Trustees, Michigan Veterans
Trust Fund, 369 F. Supp. 1327 (W.D. Mich. 1973); Carter v. Gallagher,
337 F. Supp. 626 (D. Minn. 1971); Stevens v. Campbell, 332 F. Supp.
102 (D. Mass. 1971); Attorney General Opinion H-654 (1975).

While the cases generally uphold the constitutionality of pro-
visions calculated to establish a student's bona fide intent to be
domiciled in the state, they have struck down as unconstitutional
provisions which have the effect of denying an out-of-state student
the right to show that he became a resident of the state after
entering the university.  Rebuttable presumptions of nonresidency in
these cases have been held constitutionally permissible.  See Clarke
v. Redeker, 406 F.2d 883 (8th Cir. 1969), cert. denied, 396 U.S. 862
(1969).  While a state may place a strong burden of proof as to change
of residence on a former out-of-state student who claims state
residency, each case must be decided on its own facts.  Accordingly,
the courts in several cases have struck down statutes containing
irrebuttable presumptions and have held that a person must be allowed
the opportunity to rebut a presumption of nonresidency.

The state unquestionably has the power to limit the right to vote
to residents, but Texas exceeded that power as to members of the armed
forces who moved to Texas during their military duty.  In Carrington
v. Rash, 380 U.S. 89 (1965), the United States Supreme Court declared
unconstitutional a provision of the Texas Constitution which prevented
all members of the armed forces who moved to Texas while in the
service from acquiring Texas residence for voting purposes so long as
they remained in the armed forces.  The Court held that forbidding a
serviceman an opportunity to controvert the presumption of non-
residency violated the equal protection clause.

Following the same rationale as that expressed by the Supreme
Court in Carrington, the courts have struck down provisions pro-
hibiting students originally classified as nonresident for tuition
purposes from controverting the nonresident classification for the
entire period of their attendance at a college or university in the
state.  In Vlandis v. Kline, 412 U.S. 441 (1973), the Supreme Court
held a permanent, irrebuttable presumption of nonresidency, which was
based on the fact that a student was a nonresident at the time he
applied for admission to a state university, violated the due process
clause of the Fourteenth Amendment.  See also Robertson v. Regents of
University of New Mexico, 350 F. Supp. 100 (D.N.M. 1972) (holding

statutory provision which precluded change of resident status unless university student maintained domicile for one year while not enrolled for as many as six hours in a quarter or semester created irrebuttable presumption of nonresidency in violation of due process and equal protection clauses of Fourteenth Amendment); Newman v. Graham, 349 P.2d 716 (Idaho 1960) (holding as arbitrary, capricious, and unreasonable a regulation requiring student at state university properly classified as nonresident to be frozen in that classification throughout period of attendance at the university despite the fact the student established bona fide domicile in the state after initial enrollment).

A permanent, irrebuttable presumption of nonresidency is not rationally related to the purpose of distinguishing between bona fide residents and nonresidents. We believe that a provision that requires students from other states to pay nonresident tuition throughout their college careers without affording the students an opportunity to submit evidence that they have become Texas residents since entering the university, in order to rebut the presumption of nonresidency, would not be upheld by the courts if challenged.

## S U M M A R Y

The distinction between residents and nonresidents for charging tuition at state colleges and universities is reasonable and constitutional. Also, durational residency requirements of one year have been held to be reasonable and constitutional. A durational residency requirement for tuition purposes that is longer than one year would probably raise constitutional questions which have not yet been considered or determined by the courts. A permanent, irrebuttable presumption denying students the opportunity to establish Texas residency during their college careers probably would not be upheld by the courts.

Very truly yours,

J I M   M A T T O X
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Nancy Sutton
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
Jon Bible
Susan Garrison
Tony Guillory
Jim Moellinger
Jennifer Riggs
Nancy Sutton