Leroy JONES; Ani Ebong; Rowland Nwankwo; Girma Molalegne; Quick Pick Cabs, Inc.; and Reverend Oscar S. Tillman, Plaintiffs,

v.

Robert TEMMER; Christine Alvarez; and Vincent Majowski, acting in their official capacities as members of the Colorado Public Utilities Commission, Defendants.

Civ. A. No. 93–B–235.

United States District Court,
D. Colorado.

Aug. 11, 1993.

Paula Connelly, Gorsuch, Kirgis, Campbell, Walker and Grover, Denver, CO, William H. Mellor III, Institute for Justice, Washington, DC, for plaintiffs.

Mana L. Jennings–Fader, Jeffrey A. Froeschle, Asst. Attys. Gen., Regulatory Law Section, Denver, CO, for defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Plaintiffs Leroy Jones, Ani Ebong, Rowland Nwankwo, Girma Molalegne, and Quick Pick Cabs, Inc. (Quick Pick), have brought this action for injunctive and declaratory relief against Robert Temmer, Christine Alvarez, and Vincent Majowski (collectively, defendants or commissioners) claiming violation of rights protected by the Fourteenth Amendment to the Constitution. Specifically, in Count I plaintiffs allege violations of the privileges and immunities clause and deprivation of substantive due process. In Count II plaintiffs allege violations of the equal protection clause of the Fourteenth Amendment. Finally, in Count III plaintiff Tillman asserts a separate Fourteenth

Amendment equal protection claim. Plaintiffs seek a judgment declaring that the system of Colorado state laws and regulations governing Denver taxicab business, as applied, effectively prohibits entry into the business, violates their substantive due process rights and is thus unconstitutional. In addition, plaintiffs seek to enjoin defendants from enforcing Colorado's state regulatory process and policies in a manner that unreasonably interferes with their right and opportunity to provide taxi service within the Denver metropolitan area.

Plaintiffs bring this action pursuant to the Fourteenth Amendment of the Constitution, 42 U.S.C. § 1983, and 28 U.S.C. § 2201. Jurisdiction is claimed pursuant to 28 U.S.C. §§ 1331 and 1343.

Defendants move to dismiss the amended complaint or, in the alternative, for summary judgment with respect to all counts of the amended complaint. They file this motion pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), 12(b)(7), and 56(b).

As the basis for this motion defendants state: 1) plaintiffs Quick Pick Cabs, Inc., Leroy Jones, Ani Ebong, and Rowland Nwankwo, and Girma Molalegne lack standing to bring a portion of the first claim for relief; 2) plaintiff Tillman lacks standing to bring the third claim for relief; 3) the applicable principles of abstention enunciated in *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and in *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), require abstention in this case; 4) plaintiffs have failed to join necessary parties under Fed.R.Civ.P. 19; 5) plaintiffs have failed to state a cause of action upon which relief can be granted under any count in the amended complaint; and 6) summary judgment is appropriate in this case as there are no genuine issues of material fact and defendants are entitled to judgment as a matter of law.

For the reasons set forth below I conclude that: 1) Quick Pick Cabs, Inc., and Ani Ebong lack standing to bring a claim under the privileges and immunities clause; 2) Tillman lacks standing to bring the third claim for relief; 3) I decline to abstain in this case; 4) taxicab companies operating in Denver are not necessary parties under Rule 19(a); 5) plaintiffs' first and second claims will be dismissed for failure to state a cause of action under the privileges and immunities clause, substantive due process and equal protection; and 6) plaintiff Tillman's third claim will be dismissed for lack of standing and alternatively, for failure to state a claim. Because Rule 12 applies to resolve defendants' motions, I need not address their Rule 56 arguments.

## I.

Under Colorado Revised Statutes § 40-10-102, taxicabs are deemed motor vehicle carriers, and as such are regulated as public utilities by the Public Utilities Commission (PUC). § 40-10-102, 17 C.R.S. (1984). The PUC is a regulatory agency created pursuant to Article XXV of the Colorado Constitution. It regulates taxicabs pursuant to Articles 1 through 7, inclusive, Article 10 of Title 40 of the Colorado Revised Statutes, and pursuant to the rules and regulations found at 4 Code of Colorado Regulations 723, promulgated pursuant to statutory authority.

The regulatory scheme in Colorado for common carriers of passengers, including taxicabs, is regulated monopoly. This state policy is found in § 40-5-101, 17 C.R.S. (1984). The policy "was designed to prevent duplication of facilities and competition between utilities, and to authorize new utilities in a field only when existing ones are found to be inadequate." *Public Serv. Co. v. Public Utilities Comm'n of State of Colo.*, 765 P.2d 1015, 1021 (Colo.1988).

Anyone seeking to operate a taxicab business in Colorado must obtain a "certificate of public convenience and necessity" (CPCN) from the PUC. Under the current regulatory scheme, an applicant for a CPCN has the burden of demonstrating (1) that existing service in an area is substantially inadequate, and (2) that existing companies cannot provide adequate service. Once a CPCN is obtained no other utility may provide service in that territory unless it is established that the certified utility is unable or unwilling to provide adequate service. This exclusive right to serve an area is a

property right which cannot be affected except by due process of law. *Public Serv. Co.,* 765 P.2d at 1021. Until changed by the state General Assembly, the doctrine of regulated monopoly governs and restricts the PUC in exercising its discretion in the area of granting CPCNs to taxicabs. *See Rocky Mountain Airways, Inc. v. Public Utilities Comm'n,* 181 Colo. 170, 509 P.2d 804, 807 (1973).

Plaintiffs Jones, Ebong, Nwankwo, and Molalegne formed Quick Pick, a Colorado corporation, and in July, 1992, Quick Pick filed an application with the PUC seeking a CPCN to operate a taxicab service in the Denver metro area. The existing Denver taxicab companies, along with 10 other companies operating elsewhere in Colorado, intervened to protest the application. At present, three companies, Yellow Cab, Zone Cab, and Metro Taxi, hold CPCNs and are authorized to provide taxicab service in the Denver metropolitan area. On November 23–24, 1992, the PUC conducted a hearing before an administrative law judge on Quick Pick Cabs' application. At the end of the hearing, the application was dismissed without prejudice.

## II.

### A. Abstention

■ As a preliminary matter, defendants move to dismiss the amended complaint based on the doctrine of abstention. The doctrine of abstention represents "an extraordinary and narrow exception to the duty of a district court to adjudicate a controversy properly before it." *Smith v. Paulk,* 705 F.2d 1279, 1282 (10th Cir.1983) (quoting *Colorado River Water Conservation Dist. v. U.S.,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976)). The decision to abstain is largely committed to the discretion of the district court. *Ramos v. Lamm,* 639 F.2d 559, 564 n. 4 (10th Cir.1980), *cert. denied,* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981).

■ Defendants argue that abstention is appropriate here because this case falls squarely within the principles enunciated in *Colorado River Conservation Dist. v. U.S.,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483

(1976) and *Burford v. Sun Oil Co,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). The principle distilled from these cases is that where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Colorado River Water Conservation Dist. v. U.S.,* 424 U.S. 800, 814, 96 S.Ct. 1236, 1245, 47 L.Ed.2d 483 (1976). Defendants argue that the applicable ground for abstention in this case is that the case presents difficult questions of state law bearing on policy problems of substantial public import with importance that transcends the result in this case. They assert that if this court were to modify either the basic nature of Colorado's regulatory policy or any part of the overall regulatory scheme, the modification would have ramifications and repercussions that would ripple throughout the remainder of the comprehensive and complex regulatory scheme established by the Colorado legislature and administered by the commission.

In *Burford v. Sun Oil,* a Federal District Court sitting in equity was confronted with a Fourteenth Amendment challenge to the reasonableness of the Texas Railroad Commission's grant of an oil drilling permit. The constitutional challenge was of minimal federal importance, involving solely the question whether the commission had properly applied Texas' complex oil and gas conservation regulations. 319 U.S. at 331 and n. 28, 63 S.Ct. at 1106 and n. 28. Abstention was appropriate in that case because the state courts had acquired a specialized knowledge of the regulations and industry. *Id.* at 327, 63 S.Ct. at 1104.

■ Here, plaintiffs seek relief for alleged violations of their constitutionally based civil rights under 42 U.S.C. § 1983. The obligation to exercise jurisdiction is particularly

weighty when relief is sought pursuant to 42 U.S.C. § 1983. *San Francisco County Democratic Cent. Comm. v. Eu,* 826 F.2d 814, 825 n. 19 (9th Cir.1987). This case does not involve a federal claim entangled in a complex state regulatory scheme. Although my inquiry in this case could result in an injunction against the enforcement of the state regulatory scheme as applies to these plaintiffs, abstention is not required merely because resolution of a federal question may result in the overturning of a state policy. *Zablocki v. Redhail,* 434 U.S. 374, 380 n. 5, 98 S.Ct. 673, 678 n. 5, 54 L.Ed.2d 618 (1978). I decline to abstain from hearing plaintiffs' claims in this case.

### B. Failure to Join Parties Under Rule 19

Defendants argue that taxicab companies operating in Colorado generally, and in the Denver area specifically, are necessary parties under Rule 19 and must be joined as defendants in this action, and if they cannot be joined, the action must be dismissed pursuant to Rule 12(b)(7).

To show that the taxicab companies are indispensable parties, defendants must establish that the companies fall within Rule 19(a)'s definition of necessary parties. Once a party has been found "necessary," Rule 19(b) provides factors to be considered to determine whether the suit should be dismissed if joinder of the party destroys jurisdiction. *See* Fed.R.Civ.P. 19(b). A party is "necessary" under Rule 19(a) if:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed.R.Civ.P. 19(a).

There are at present 38 persons or entities in Colorado holding CPCNs to operate as taxicab companies. Defendants argue that current holders of CPCNs are necessary parties under both 19(a)(2)(i) and 19(a)(2)(ii). Defendants contend that the question of the constitutionality of the regulatory scheme governing taxicabs as applied to these plaintiffs raises the state law issue of protection of the property rights of the present taxicab CPCN holders. Defendants argue that the current holders of CPCNs are so situated that the disposition of this case in their absence may, as a practical matter, impair or impede their ability to protect that interest. *See* Fed.R.Civ.P. 19(a)(2)(i). Alternatively, defendants assert that because disposition of this case in the absence of these taxicabs companies may leave one or more of the present parties subject to a substantial risk of incurring inconsistent obligations, the CPCN holders must be joined as defendants. Fed.R.Civ.P. 19(a)(2)(ii). I find no merit in defendants arguments. Since I conclude that 19(a) does not apply, 19(b) cannot be applied to dismiss the action.

### C. Standards for Dismissal

Under Rule 12(b)(6), a district court may dismiss a complaint for failure to state a claim upon which relief can be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). In reviewing the sufficiency of the complaint, all well-pled facts, as opposed to conclusory allegations, must be taken as true. *Weiszmann v. Kirkland & Ellis,* 732 F.Supp. 1540, 1543 (D.Colo. 1990). All reasonable inferences must be liberally construed in the plaintiff's favor. *Id.*

### D. Standing

Before the plaintiffs filed their amended complaint, the commission filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) asserting that this court lacks subject matter jurisdiction because plaintiffs lack standing to bring a portion of the first claim for relief and the entirety of the third claim for relief. Defendants renew this motion now.

The focus of an inquiry into standing "is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise...." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). The constitutional limitations of standing are derived from Article III, which limits judicial power to cases and controversies.

■ To overcome the Article III limitation on standing, often referred to as the "injury in fact" requirement, a plaintiff must at a minimum show an actual or threatened injury caused by the defendant and that a favorable judicial decision is likely to redress the injury. *Valley Forge Christian College v. Americans United for Separation of Church and State Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). There are, in addition, prudential principles applying to standing that limit the class of persons who may invoke a courts' powers. *Id.* at 474, 102 S.Ct. at 759–60. In *Valley Forge Christian College*, the court listed the three "prudential principles": (1) the plaintiff must assert his own rights and may not rely on the constitutional rights of third parties; (2) the court must not adjudicate "generalized grievances" that are more appropriately addressed by the executive or legislative branches of government; and (3) the plaintiff must come within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question. *Id.* at 474–75, 102 S.Ct. at 759–60.

■ Defendants first argue that plaintiff Quick Pick has no standing to bring the first cause of action. According to paragraph 8 of the complaint, plaintiff Quick Pick is a corporation. The Tenth Circuit has held that a corporation has no standing to maintain a claim under the privileges and immunities clause of the Fourteenth Amendment. *Smith v. Paulk*, 705 F.2d 1279, 1283 (10th Cir.1983). The privileges and immunities claim with respect to Quick Pick Cabs, Inc. will be dismissed for lack of standing.

■ Second, defendants argue that plaintiff Ebong has no standing to maintain a claim under the privileges and immunities clause because he is not a citizen of the United States. *See Banerjee v. Roberts*, 641 F.Supp. 1093, 1103 (D.Conn.1985). By its terms, § 1 of the Fourteenth Amendment protects only "persons born or naturalized in the United States." By his own admission, plaintiff Ebong is neither; he is a "permanent resident of the United States." (Complaint ¶ 5.) Thus, the privileges and immunities claim with respect to plaintiff Ebong will be dismissed for lack of standing.

Defendants further argue that all plaintiffs lack standing to bring the privileges and immunities portion of the first claim for relief because that clause protects nonresidents of Colorado from discrimination based on their nonresident status, and here, each plaintiff is a resident of Colorado. Plaintiffs respond that defendants have confused the privileges and immunities clause of the Fourteenth Amendment with the privileges and immunities clause under Article IV, section 2 of the Constitution.

■ The privileges and immunities clause of the Fourteenth Amendment protects very few rights because it neither incorporates any of the Bill of Rights nor protects all rights of individual citizens. *See Slaughter–House Cases*, 83 U.S. (16 Wall.) 36, 21 L.Ed. 394 (1873). Instead, this provision protects only those rights peculiar to being a citizen of the federal government; it does not protect those rights which relate to state citizenship. *Id.* Accordingly, it is not necessary that plaintiffs have non-resident status in order to bring a claim under the privileges and immunities clause of the Fourteenth Amendment. As discussed below in section E(a), however, plaintiffs have failed to state a claim under the privileges and immunities clause of the Fourteenth Amendment.

■ Finally, defendants argue that plaintiff Tillman has no standing to bring the third claim for relief. In the third claim, Tillman alleges that: he is a member of the general public in Denver; he uses taxicabs in Denver; Colorado's regulatory scheme for taxicabs artificially limits the availability of taxicabs in Denver; and, as a result, he and

other individuals in the neighborhood in which he lives and resides are denied "opportunities equal to those of other Denver residents to enjoy taxicab services." (Complaint at 14.) On these allegations, Tillman brings his claim of deprivation of his rights to equal protection under the Fourteenth Amendment.

Defendants argue that Tillman cannot prove a fairly traceable causal relationship between Colorado's regulatory scheme and his alleged injury. They also contend that Tillman has not shown, and cannot prove without engaging in gross speculation, that he will have any greater access to taxicab service in Denver if this court grants his request for declaratory and injunctive relief. Defendants further argue that Tillman asserts no special harm personal to him, but rather complains only about the general unavailability of taxicabs in some neighborhoods of Denver and complains that this has incidentally affected him.

As to defendants allegation that Tillman has alleged only a generalized grievance, Tillman need only allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants. *Warth,* 422 U.S. at 501, 95 S.Ct. at 2206. I find that Tillman has satisfied this requirement. I conclude, however, that defendants other arguments have merit.

Accepting his allegations as true, and construing the complaint in his favor, Tillman has failed to allege facts from which I can reasonably infer that, absent the defendants' restrictive regulatory scheme, there is a substantial probability that he would have access to taxicabs equal to that of other Denver residents. *See Warth v. Seldin,* 422 U.S. at 505–07, 95 S.Ct. at 2208–10. In addition, I am unable to infer that if I grant the relief requested, there is a substantial probability that the perceived inequity will be removed. *See id.* I conclude, therefore, that Tillman lacks standing to bring the third claim for relief.

### E. First Claim for Relief

The Supreme Court has established two necessary elements for recovery of damages under a 42 U.S.C. § 1983 civil rights claim. A plaintiff must prove that the defendant has deprived him of a right secured by the United States Constitution and, second, that the defendant deprived plaintiff of this right under color of state law. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970). Here, defendants do not dispute that all actions were taken under color of state law; the only issue is whether plaintiffs suffered a constitutional deprivation. Plaintiffs allege violations of their Fourteenth Amendment rights. I will address, seriatim, plaintiffs claims relating to privileges and immunities, substantive due process and equal protection.

### a) Privileges and Immunities

Plaintiffs Jones, Ebong, Nwankwo, Molalegne, and Quick Pick Cabs, Inc. seek declaratory and injunctive relief based on the allegation that the Colorado regulatory regime for taxicabs deprives them of privileges and immunities of citizenship under the Fourteenth Amendment. That which plaintiffs seek to redress in this context is their "basic right to pursue their chosen livelihoods and to operate a legitimate business." (Amended Complaint at 1.)

The privileges and immunities clause of the Fourteenth Amendment protects very few rights. To my knowledge, in the history of the United States Supreme Court, only one decision determined that a state violated this provision and that decision was overruled within a few years. *Colgate v. Harvey,* 296 U.S. 404, 56 S.Ct. 252, 80 L.Ed. 299 (1935), overruled in *Madden v. Commonwealth of Kentucky,* 309 U.S. 83, 60 S.Ct. 406, 84 L.Ed. 590 (1940). In the *Slaughter-House Cases,* 83 U.S. (16 Wall.) 36, 21 L.Ed. 394 (1873), the Supreme Court held that this clause neither incorporates the Bill of Rights nor protects all rights of individual citizens. Rather the provision protects only those rights peculiar to being a citizen of the United States; it does not protect those rights which relate to state citizenship. As a court of this district noted, "the argument that the clause creates a substantive right to pursue one's lawful occupation or profession free from state limitations was laid to rest long

ago by the United States Supreme Court." *Galahad v. Weinshienk,* 555 F.Supp. 1201, 1207 (D.Colo.1983). Here, plaintiffs have failed to allege that defendants have eliminated a federal right protected by the privileges and immunities clause. I will dismiss the privileges and immunities claim against all defendants for failure to state a claim upon which relief can be granted.

### b) Substantive Due Process

Plaintiffs Jones, Ebong, Nwankwo, Molalegne, and Quick Pick Cabs, Inc., seek declaratory and injunctive relief claiming that Colorado's regulatory regime for taxicabs deprives them of due process under the Fourteenth Amendment. Plaintiffs make a substantive due process attack on the Colorado regulatory scheme.

 The due process clause of the Fourteenth Amendment includes a substantive component which guards against arbitrary and capricious government action. *Sinaloa Lake Owners Ass'n v. City of Simi Valley,* 882 F.2d 1398, 1407 (9th Cir.1989), *cert. denied,* 494 U.S. 1016, 110 S.Ct. 1317, 108 L.Ed.2d 493 (1990). Substantive due process imposes limits on what a state may do regardless of what procedural protection is provided. *Harrington v. Almy,* 977 F.2d 37, 43 (1st Cir.1992) (quoting *Pittsley v. Warish,* 927 F.2d 3, 6 (1st Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 226, 116 L.Ed.2d 183 (1991).

The Tenth Circuit case law is unclear on what interest is required to trigger substantive due process guarantees. *Compare Harris v. Blake,* 798 F.2d 419, 424 (10th Cir. 1986), *cert. denied,* 479 U.S. 1033, 107 S.Ct. 882, 93 L.Ed.2d 836 (1987) (claim for denial of substantive due process requires that plaintiff allege a liberty or property interest); *Brenna v. Southern Colorado State College,* 589 F.2d 475, 476 (10th Cir.1978) (same); *Weathers v. West Yuma County School Dist.,* 530 F.2d 1335, 1342 (10th Cir.1976) (same), *with Mangels v. Pena,* 789 F.2d 836, 839 (10th Cir.1986) ("Rights of substantive due process are founded not upon state provisions but upon deeply rooted notions of fundamental personal interests derived from the Constitution.") The interest alleged by the plaintiffs, their liberty to pursue a chosen

livelihood, has not been treated as a fundamental right by the courts. *See City of New Orleans v. Dukes,* 427 U.S. 297, 303–04, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511 (1976); *Harper v. Lindsay,* 616 F.2d 849, 854 (5th Cir.1980). Nor is the mere denial of a business or employment opportunity, "without more," the deprivation of a liberty interest because plaintiffs ability to obtain future business or employment opportunities is not jeopardized. *Bannum, Inc. v. Town of Ashland,* 922 F.2d 197, 201 (4th Cir.1990). The necessary "more" referred to by the court is provided when there is either public disparagement damaging to an individual's standing in the community or a stigmatic injury to an employment interest likely to impair future work-related opportunities. *Schneeweis v. Jacobs,* 771 F.Supp. 733, 737 (E.D.Va. 1991), *aff'd,* 966 F.2d 1444 (4th Cir.1992). Here, plaintiffs allege no public disparagement or stigmatic injury to their future ability to obtain employment.

 Even assuming arguendo a protectable interest, I conclude that plaintiffs have failed to state a claim under substantive due process. The regulatory scheme at issue here is economic or business regulation based on the exercise of Colorado's police powers. Colorado's scheme for the regulation of motor vehicle carriers of passengers does not employ any classification based on a "suspect" category. Further, the regulatory scheme does not implicate any fundamental constitutionally-protected values. Thus, the substantive due process inquiry requires me to determine if the governmental action is rationally related to a legitimate state interest. *Allright Colorado, Inc. v. City and County of Denver,* 937 F.2d 1502, 1511 (10th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 587, 116 L.Ed.2d 612 (1991).

Governmental bodies have "wide latitude in enacting social and economic legislation; the federal courts do not sit as arbiters of the wisdom or utility of these laws." *Allright Colorado,* 937 F.2d at 1512, quoting *Alamo Rent-A-Car, Inc.,* 825 F.2d at 370. I need not satisfy myself that the challenged rules will in fact further their articulated purposes; it is sufficient if the Colorado General Assembly could rationally have concluded that

the purposes would be achieved. See *Allright Colorado*, 937 F.2d at 1512.

The Colorado Supreme Court has specifically identified the following as public health, welfare, and safety interests justifying public utility regulation: (1) prevention of, or reduction of, destructive use of the public highways, *Public Utilities Comm. v. Manley*, 99 Colo. 153, 60 P.2d 913, 919 (1936); (2) increased safety of those traveling on or using the public highways, *McKay v. Public Utilities Comm'n*, 104 Colo. 402, 91 P.2d 965, 969 (1939); (3) coordination of commercial motor vehicle transportation on the public highways, *id.;* and (4) prevention, "in the interest of the general public, [of] unnecessary duplication of facilities or systems for furnishing [service] to customers," *Public Serv. Co. v. Public Utilities Comm'n*, 142 Colo. 135, 350 P.2d 543, 550 (1960), *cert. denied*, 364 U.S. 820, 81 S.Ct. 53, 5 L.Ed.2d 50 (1960). Plaintiffs agree that a legitimate state interest exists in protecting the public health, safety, and welfare and contest only whether the regulatory scheme is rationally related to protecting these legitimate interests. I find and conclude that they clearly are rationally related to a legitimate Colorado state interest. I will, therefore, dismiss plaintiffs claim based on violation of substantive due process.

### F. Second Claim for Relief—Equal Protection

■■■ The Equal Protection Clause requires that no state "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const.Amend. XIV, § 1. A violation of equal protection occurs when the government treats someone differently than another who is similarly situated. *Jacobs, Visconsi & Jacobs v. City of Lawrence, Kan.*, 927 F.2d 1111, 1118 (10th Cir.1991); *see also City of Cleburne, Tex. v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985); *Landmark Land Co. of Oklahoma, Inc. v. Buchanan*, 874 F.2d 717, 722 (10th Cir.1989). In determining whether an equal protection violation has occurred, the court must (1) identify the questioned classification of groups, and (2) determine whether the classification is valid applying the appropriate

standard of review. *See Allright Colorado v. City and County of Denver*, 937 F.2d 1502, 1511 (10th Cir.1991). Plaintiffs bear the burden of demonstrating the unconstitutionality of the challenged classification and courts generally presume that the legislative act is valid. *Parham v. Hughes*, 441 U.S. 347, 351, 99 S.Ct. 1742, 1745–46, 60 L.Ed.2d 269 (1979).

■■■ The standard of review applicable when a plaintiff challenges economic or commercial legislation as violating the equal protection requires the state or municipal defendant to show that the classification has a rational basis. *Jacobs, Visconsi & Jacobs Co.*, 927 F.2d at 1119; *see also City of Cleburne Living Center*, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); *Alamo Rent–A–Car, Inc. v. Sarasota–Manatee Airport Auth.*, 825 F.2d 367 (11th Cir.1987), *cert. denied*, 484 U.S. 1063, 108 S.Ct. 1022, 98 L.Ed.2d 987 (1988). The Supreme Court has recently reiterated this principle:

> Whether embodied in the Fourteenth Amendment or inferred from the Fifth, equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices. In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge *if there is any reasonably conceivable state of facts* that could provide a rational basis for the classification. [Citations omitted.] Where there are "plausible reasons" for [legislative] action, "our inquiry is at an end." [Citation omitted.]

*Federal Communications Comm'n v. Beach Communications, Inc.*, —— U.S. ——, ——, 113 S.Ct. 2096, 2101, 124 L.Ed.2d 211 (1993) (emphasis in original). The limitation in this analysis is that a State may not rely on a classification whose relationship to an asserted interest is so attenuated as to render the distinction arbitrary or irrational. *Cleburne*, 473 U.S. at 446, 105 S.Ct. at 3257–58.

■■■ Here, plaintiffs' claim is grounded in their objection to the policy choice made by the Colorado General Assembly when it decided to regulate motor vehicle carriers of

passengers under the doctrine of regulated monopoly. Plaintiffs identify three separate classification schemes. First, plaintiffs allege that there are two groups of common carriers by motor vehicle: one that transports property, and another that transports people. The transportation of property is regulated under the scheme of "regulated competition," while the transportation of people is regulated under the scheme of "regulated monopoly." Defendants do not dispute this classification, however, they argue there is a rational basis for it. Defendants have presented that the Colorado General Assembly could have determined the following: 1) that relaxed entry into the market for common carriers of property was acceptable as an experiment despite the possibility of the elimination of some carriers or an increase in the costs to carry the goods; 2) the availability of common carriers of passengers is an important means of public transportation and, thus, is too important to serve as a vehicle for an experiment in relaxed regulation; 3) public transportation of passengers is too important to risk the elimination of carriers, the disgruntlement of drivers who find their earnings decreasing, or the increase in the rates paid by passengers. I find and conclude, therefore, that a rational basis exists for this classification.

A second classification scheme alleged by plaintiffs is a difference in classification among transporters of passengers. Plaintiffs contend that while taxicab service is operated to impose an insurmountable barrier to entry, other passenger services, such as off-road scenic tours and charter buses seating over 32 passengers, impose no regulations that operate as barriers to entry. Defendants argue that a distinction between these two groups is justified because common carriers, such as taxicabs, are responsible for providing service in a designated service territory to any and all who seek its services while other passenger carriers are not. Defendants contend considerations such as wear and tear on the roads, control of traffic flow, and the need to assure the availability of different forms of transportation could have motivated the General Assembly. Again, defendants have presented a rational basis for this classification.

Plaintiffs claim a third classification scheme exists in the organization of the taxicab industry within the state. They contend that in almost every other market in Colorado the taxicab industry truly is a "regulated monopoly" in that there is only one certified taxicab company within a service area. In Denver, however, there is a "shared regulated monopoly" as a result of the existing companies being "grandfathered" into the regulated monopoly scheme decades ago resulting in three operating companies. I find and conclude that plaintiffs have failed to state how this "classification," works to deny them equal protection. Nevertheless, there is certainly a conceivable rational basis for grandfathering in existing companies at the time the regulatory scheme was enacted. Accordingly, plaintiffs claim based on violation of equal protection must fail.

## G. Third Claim for Relief—Equal Protection, Tillman

Plaintiff Tillman argues that the effect of the PUC regulatory regime is to artificially limit the supply of taxicabs in Denver which results in poor service for low-income neighborhoods where Tillman resides and works. The effective ban on new companies denies individuals in these neighborhoods, including Tillman, opportunities equal to those of other Denver residents to enjoy taxicab services. Tillman argues that the regulatory regime affects his fundamental right to intra-state travel, requiring me to apply strict scrutiny in determining that the state regulations are necessary to achieve a compelling government interest.

I have held, above, that Tillman lacks standing to bring this third claim for relief. Even assuming Tillman's standing to assert this claim, dismissal is appropriate for failure to state a claim.

 The strict scrutiny test is invoked in either of two situations: first, where there is a "suspect" classification based upon race, alienage or national origin; and second, where a fundamental interest is at stake. These fundamental interests include the right to vote, the right of access to the courts, and the right to interstate travel.

*San Antonio Indep. School Dist. v. Rodriguez*, 411 U.S. 1, 18–20, 32–36, 93 S.Ct. 1278, 1288–90, 1296–98, 36 L.Ed.2d 16 (1973). The Supreme Court has never directly considered the right to intra-state travel. History teaches that the founding fathers were concerned with the former and not the later. I decline to recognize such a right under the facts presented here.

Accordingly, it is ORDERED that

1) defendants' motion to dismiss the privileges and immunities claim brought by plaintiffs Quick Pick Cabs and Ebong for lack of standing is GRANTED;

2) defendants' motion to dismiss the privileges and immunities claim brought by plaintiffs Rowland Nwankwo and Girma Molalegne for lack of standing is DENIED;

3) defendants' motion to dismiss the third claim for relief because Tillman lacks standing, or alternatively for failure to state a claim, is GRANTED;

4) defendants' motion to join necessary parties pursuant to Rule 19(a) is DENIED;

5) defendants' request that I abstain from hearing this case is DENIED;

6) defendants' motion to dismiss plaintiffs' first and second claims based on privileges and immunities, substantive due process and equal protection, for failure to state a claim for which relief may be granted is GRANTED;

7) this action is dismissed and costs are awarded to defendants.